## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

PHILIP A. TEMPLETON, M.D., P.A.  )
            )
    *Plaintiff,*     )
            )
v.            )
            ) Civil Action No. _____
EMCARE, INC.       )
            )
    *Defendant.*    )
            )
_____ )

### COMPLAINT

Philip A. Templeton, M.D., P.A. ("Templeton" or "Plaintiff") files this Complaint against EmCare, Inc. ("EmCare"), alleging as follows:

### PARTIES

1. Templeton is, and at all relevant times has been, a professional association existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland.

2. Dr. Philip A. Templeton ("Dr. Templeton") is the sole shareholder of Templeton.

3. Dr. Templeton is, and at all relevant times has been, a resident and citizen of the State of Maryland.

4. Defendant EmCare is, and at all relevant times has been, a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1717 Main Street, Dallas, Texas 75201.

## JURISDICTION AND VENUE

5.      The Court has personal jurisdiction over EmCare because it is a corporation organized and existing under the laws of the State of Delaware, and EmCare has consented to personal jurisdiction in this Court.

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Templeton and EmCare, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because EmCare resides within this judicial district, and EmCare has consented to venue in this Court.

## FACTUAL BACKGROUND

### The Earn-Out Payment and Deficiency Amount

8.      Templeton, Dr. Templeton, and EmCare entered into a Membership Interest Purchase Agreement, dated as of October 17, 2008 (the "Purchase Agreement").  Capitalized terms used herein without definition shall have the meanings given in the Purchase Agreement. A true and accurate copy of the Purchase Agreement is attached hereto as Exhibit A.

9.      Templeton is the "Seller" under the Purchase Agreement.  EmCare is the "Purchaser" under the Purchase Agreement.

10.      Under the Purchase Agreement, EmCare acquired from Templeton all of the issued and outstanding membership interests of Templeton Readings, LLC, P.A. ("Templeton Readings").

11.      The purchase price for all of the issued and outstanding membership interests of Templeton Readings was $27,500,000 plus "the Earn-Out Payment, if any, pursuant to Section 2.3." *See* Purchase Agreement at ¶ 2.2.

2

12.     Paragraph 2.3 of the Purchase Agreement provides specific terms and conditions for an Earn-Out Payment to Templeton or the payment of a Deficiency Amount to EmCare. *Id.* at ¶ 2.3.

13.     The EBITDA ( as defined under the Purchase Agreement) of Templeton Readings for the calendar year ending December 31, 2009, determines whether Templeton would be entitled to an Earn-Out Payment or whether EmCare would be entitled to a Deficiency Amount. *Id.* at ¶ 2.3(a) – (b).  Specifically, the Purchase Agreement provides a formula for the calculation of the Earn-Out Payment or the Deficiency Amount that is based on EBITDA of Templeton Readings for the calendar year ending December 31, 2009.

14.     Pursuant to Section 2.3(c) of the Purchase Agreement, EmCare was required to provide Templeton a calculation of the Earn-Out Payment or the Deficiency Amount "[w]ithin sixty (60) days following December 31, 2009" as a prerequisite to the payment of an Earn-Out Payment or the Deficiency Amount. *Id.* at ¶ 2.3(c).

15.     After providing timely written notice of the calculation of the Earn-Out Payment or the Deficiency Amount, the Purchase Agreement provides Templeton with the right to review records to verify and challenge the calculation of EBITDA for Templeton Readings. *Id.* at ¶ 2.3(d).

16.     The Purchase Agreement requires that communications pursuant to the Purchase Agreement, such as the calculation of the Earn-Out Payment or the Deficiency Amount, be in writing. *Id.* at ¶ 11.5.

17.     The Purchase Agreement also provides that "time is of the essence of this [Purchase] Agreement." *Id.* at ¶ 11.12.

18.     Therefore, as a prerequisite to the payment of an Earn-Out Payment or the Deficiency Amount, EmCare had through and including March 1, 2010 to provide to Templeton a written calculation of the Earn-Out Payment or the Deficiency Amount.

19.     Notwithstanding these explicit requirements, EmCare failed to provide Templeton with any such written calculation on or before March 1, 2010.

20.     Via letter dated August 15, 2011 ("August 15 Letter"), more than seventeen (17) months after the March 1, 2010 deadline, EmCare for the first time provided Templeton with the purported EBITDA for Templeton Readings for 2009, and the calculation of the purported Deficiency Amount.  A true and accurate copy of the August 15 Letter is attached hereto as Exhibit B.

21.     Templeton was prejudiced by EmCare's seventeen (17) month delay in providing the purported EBITDA for Templeton Readings for 2009 in breach of the Purchase Agreement. This breach of the Purchase Agreement and seventeen (17) month delay in providing the purported EBITDA for Templeton Readings for 2009 unfairly prejudices Templeton's ability to verify and challenge the calculation of EBITDA for Templeton Readings for 2009.  The parties acknowledged the importance of timely providing the calculation of EBITDA and the Earn-Out Payment and Deficiency Amount by providing a specific time period in the Purchase Agreement in which EmCare must provide the calculation and stating in the Purchase Agreement that time is of the essence of the Purchase Agreement.

22.     In the August 15 Letter, despite EmCare's failure to timely provide the calculation of the purported Deficiency Amount pursuant to the terms of the Purchase Agreement, EmCare stated that the Deficiency Amount was $10,000,000.00 and asserted that Templeton was liable to EmCare for the payment of the Deficiency Amount.

23.     Via letter dated August 24, 2011 ("August 24 Letter"), Dr. Templeton replied to the August 15 Letter, informing EmCare that Templeton does not owe EmCare any Deficiency Amount because its demand for payment of the Deficiency Amount was null and void, and requesting that EmCare notify Templeton within seven (7) days if it intended to continue to demand payment of the alleged Deficiency Amount, despite EmCare's failure to comply with the Purchase Agreement.  A true and accurate copy of the August 24 Letter is attached hereto as Exhibit C.  As of the date of this Complaint, EmCare has not responded to the August 24 Letter.

24.     EmCare's August 15, 2011 demand for the payment of a Deficiency Amount is null and void for failure to timely provide the calculation of the Deficiency Amount to Templeton in writing on or before March 1, 2010.  For this reason, among others, Templeton does not owe EmCare any Deficiency Amount.

25.     Templeton's right to perform a review of records to verify and challenge the calculation of EBITDA of Templeton Readings has not commenced because EmCare did not provide timely written notice of the calculation of the Deficiency Amount.

26.     Similarly, because Templeton's right to perform a review of records to verify and challenge the calculation of EBITDA of Templeton Readings has not commenced, the time period in which the parties shall select an accountant to resolve any differences regarding the correct calculation of EBITDA has not commenced given that EmCare did not provide timely written notice of the calculation of the Deficiency Amount.

## Restrictions on EmCare During the Earn-Out Period

27.     The Purchase Agreement also required EmCare, from the time of the closing of the Purchase Agreement through December 31, 2009, to "consult with [Dr. Templeton] in good faith in connection with strategic, operational, personnel, and related decisions with respect to

5

the [business of Templeton Readings]that could reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment." Purchase Agreement at ¶ 3.1(v).

28.     From the time of the closing of the Purchase Agreement through December 31, 2009, EmCare did not adequately consult Dr. Templeton regarding strategic decisions that could reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment.

29.     From the time of the closing of the Purchase Agreement through December 31, 2009, EmCare did not adequately consult Dr. Templeton regarding any operational decisions that could reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment.

30.     From the time of the closing of the Purchase Agreement through December 31, 2009, EmCare did not adequately consult Dr. Templeton regarding any personnel decisions that could reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment.

31.     EmCare's failure to adequately consult Dr. Templeton on strategic, operational, personnel and related decisions with respect to the business of Templeton Readings constituted a breach of the Purchase Agreement.

32.     EmCare's failure to adequately consult Dr. Templeton on strategic, operational, personnel and related decisions with respect to the business of Templeton Readings proximately caused the EBITDA for Templeton Readings to be lower than it otherwise would have been had EmCare adequately consulted with Dr. Templeton on these matters.  Therefore, to the extent that EmCare is not precluded from seeking a Deficiency Amount due to its breach of the Purchase Agreement's requirement that the calculation of the Earn-Out Payment or Deficiency Amount be provided on or before March 1, 2010, Templeton has been harmed by EmCare's failure to

adequately consult with Dr. Templeton because the artificially lower EBITDA negatively affected the calculation of the Earn-Out Payment and the Deficiency Amount.

33.    In addition, Templeton was prejudiced by EmCare's seventeen (17) month delay in providing the purported EBITDA for Templeton Readings for 2009 in breach of the Purchase Agreement.  This breach of the Purchase Agreement and seventeen (17) month delay in providing the purported EBITDA for Templeton Readings for 2009 unfairly prejudices Templeton's ability to establish the amount by which EBITDA for Templeton Readings in 2009 would have been higher had EmCare properly consulted with Dr. Templeton on these matters.

34.    The Purchase Agreement also required EmCare, from the time of the closing of the Purchase Agreement through December 31, 2009, to "maintain a separate accounting of the revenue and expenses" of teleradiology services contracted for by Templeton Readings, or its successors or valid assignees of such contracts, "in a manner that facilitates calculation of EBITDA as provided [therein]."

35.    Upon information and belief, EmCare failed to maintain separate accounting of the revenue and expenses of the teleradiology services identified above in a manner that facilitated the calculation of EBITDA as provided in the Purchase Agreement.  Specifically, upon information and belief, EmCare improperly charged non-Templeton Readings expenses against Templeton Readings.

36.    EmCare's failure to maintain a separate accounting of the revenue and expenses" of teleradiology services contracted for by Templeton Readings proximately caused the EBITDA for Templeton Readings to be lower than it otherwise would have been had EmCare adequately consulted with Dr. Templeton on these matters.  Therefore, to the extent that EmCare is not precluded from seeking a Deficiency Amount due to its breach of the Purchase Agreement's

requirement that the calculation of the Earn-Out Payment or Deficiency Amount be provided on or before March 1, 2010, Templeton has been harmed by EmCare's failure to maintain a separate accounting of the revenue and expenses" of teleradiology services contracted for by Templeton Readings because the artificially lower EBITDA negatively affected the calculation of the Earn-Out Payment and the Deficiency Amount.

## COUNT ONE
## DECLARATORY JUDGMENT

37.     Templeton restates and re-alleges the allegations contained in this Complaint as if fully stated herein.

38.     Templeton requests relief pursuant to 28 U.S.C. §§ 2201-2202.

39.     A dispute exists between Templeton and EmCare concerning the parties' respective rights and obligations under the Purchase Agreement.

40.     There exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

41.     There is an actual, justiciable controversy as to whether Templeton is obligated to pay EmCare any Deficiency Amount under the Purchase Agreement as a result of EmCare's breach of the Purchase Agreement's requirement that EmCare provide Templeton with the calculation of the Earn-Out Payment or Deficiency Amount on or before March 1, 2010.

42.     The facts are sufficiently established such that an actual and live controversy exists between the parties and it is ripe for adjudication.

43.     The declarations by this Court, as prayed for below, will terminate the controversy and remove uncertainty as to the legal rights and obligations between the parties.

44.     Templeton respectfully submits that this Court should exercise its power, pursuant to 28 U.S.C. §§ 2201-2202, and issue an order declaring that Templeton is not obligated to pay EmCare any Deficiency Amount and that EmCare's August 15, 2011 demand for payment of the Deficiency Amount is null and void.

45.     All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT TWO
## BREACH OF CONTRACT
### (In The Alternative)

46.     This cause of action for breach of contract is in the alternative to Templeton's cause of action for declaratory judgment.  Templeton asserts this cause of action for breach of contract solely to the extent that the Court determines that EmCare's breach of the Purchase Agreement's requirement that EmCare provide Templeton with the calculation of the Earn-Out Payment or Deficiency Amount on or before March 1, 2010 does not preclude EmCare from seeking the payment of a Deficiency Amount.

47.     Templeton restates and re-alleges the allegations contained in this Complaint as if fully stated herein.

48.     Section 3.1(v) of the Purchase Agreement provides that from the time of the closing of the Purchase Agreement through December 31, 2009, EmCare "shall consult with [Dr. Templeton] in good faith in connection with strategic, operational, personnel, and related decisions with respect to the [business of Templeton Readings] that could reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment."

49.     From the time of the closing of the Purchase Agreement through December 31, 2009, EmCare did not adequately consult Dr. Templeton regarding "strategic, operational, personnel, and related decisions with respect to the [business of Templeton Readings] that could

reasonably be expected to impact the likelihood of achieving the Maximum Earn-Out Payment" as required by the Purchase Agreement.

50.    EmCare's failure to comply with Section 3.1(v) constitutes a material breach of the Purchase Agreement.

51.    Had EmCare complied with Section 3.1(v) of the Purchase Agreement and adequately consulted Dr. Templeton regarding strategic, operational, personnel, and related decisions with respect to the business of Templeton Readings, the EBITDA of Templeton Readings would have been higher.

52.    Section 3.1(i) of the Purchase Agreement required EmCare to "maintain a separate accounting of the revenue and expenses" of teleradiology services contracted for by Templeton Readings, or its successors or valid assignees of such contracts, "in a manner that facilitates calculation of EBITDA as provided [therein]."

53.    Upon information and belief, EmCare failed to maintain separate accounting of the revenue and expenses of the teleradiology services identified above in a manner that facilitated the calculation of EBITDA as provided in the Purchase Agreement.  Specifically, upon information and belief, EmCare improperly charged non-Templeton Readings expenses against Templeton Readings.

54.    EmCare's failure to comply with Section 3.1(i) constitutes a material breach of the Purchase Agreement.

55.    Had EmCare complied with Section 3.1(i) of the Purchase Agreement and properly maintained separate accounting of the revenue and expenses of the teleradiology services identified above, in a manner that facilitated the calculation of EBITDA as provided in the Purchase Agreement, the EBITDA of Templeton Readings would have been higher.

56.     Templeton has suffered damages because the higher EBITDA that would have resulted from EmCare's compliance with Sections 3.1(i) and 3.1(v) of the Purchase Agreement may have resulted in an Earn-Out Payment to Templeton and certainly would have resulted in a lower Deficiency Amount, to the extent one was owed under the Purchase Agreement.

**COUNT THREE**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(In The Alternative)**

57.     This cause of action for breach of the implied duty of good faith and fair dealing is in the alternative to Templeton's cause of action for declaratory judgment.  Templeton asserts this cause of action for of the implied duty of good faith and fair dealing solely to the extent that the Court determines that EmCare's breach of the Purchase Agreement's requirement that EmCare provide Templeton with the calculation of the Earn-Out Payment or Deficiency Amount on or before March 1, 2010 does not preclude EmCare from seeking the payment of a Deficiency Amount.

58.     EmCare affirmatively took actions, and/or failed to take actions, with respect to the business of Templeton Readings which artificially lowered the EBITDA of Templeton Readings, thereby negatively affecting Templeton's ability to obtain the maximum Earn-Out Payment.

59.     For example, EmCare failed to integrate and support Templeton Readings following the closing of the Purchase Agreement and throughout 2009.  EmCare failed to pursue and respond to opportunities to grow the business of Templeton Readings, failed to introduce the services of Templeton Readings to potential clients and, in some cases, affirmatively took actions to block or prevent certain business opportunities for Templeton Readings.

11

60.     EmCare engaged in arbitrary and unreasonable conduct by artificially preventing the EBITDA of Templeton Readings from reaching the threshold amount to entitle Templeton to an Earn-Out Payment.

61.     By engaging in the arbitrary and unreasonable conduct described above, EmCare took advantage of its position under the Purchase Agreement to control the business of Templeton Readings and determine whether Templeton was entitled to an Earn-Out Payment or whether EmCare would be entitled to a Deficiency Amount under Paragraph 2.3 of the Purchase Agreement.

62.     EmCare's arbitrary and unreasonable conduct frustrated the overarching purpose of the Purchase Agreement.

63.     EmCare's arbitrary and unreasonable conduct had the effect of preventing Templeton from receiving the maximum Earn-Out Payment under the Purchase Agreement.

**WHEREFORE,** Templeton respectfully requests judgment in its favor and against EmCare as follows:

a)     that the Court declare the rights and obligations of the parties under the Purchase Agreement, and issue a declaration that:

(i)     EmCare breached the Purchase Agreement by failing to provide Templeton with written notice of the calculation of the Earn-Out Payment or Deficiency Amount on or before March 1, 2010;

(ii)     EmCare's August 15 Letter purporting to provide Templeton with the calculation of a Deficiency Amount is null and void as a result of EmCare's failure to

provide Templeton with written notice of the calculation of the Earn-Out Payment or

Deficiency Amount on or before March 1, 2010; and

       (iii)    Templeton does not owe EmCare any Deficiency Amount under the

Purchase Agreement.

    b)    if, and only if, the Court determines that EmCare's breach of the Purchase

Agreement's requirement that EmCare provide Templeton with the calculation of the Earn-Out

Payment or Deficiency Amount on or before March 1, 2010 does not preclude EmCare from

seeking the payment of a Deficiency Amount, that the Court enter judgment in favor of

Templeton in an amount to be determined at trial as a result of EmCare's failure to comply with

Section 3.1 of the Purchase Agreement and EmCare's breach of the duty of good faith and fair

dealing;

    c)    that Templeton have a trial by jury on all issues so triable;

    d)    that the Court award Templeton its costs and reasonable attorneys' fees; and

    e)    that the Court grant Templeton such further and additional legal and equitable

relief as this Court may deem just and proper.

[space intentionally left blank]

Respectfully submitted, this 13th day of September, 2011.

R. Montgomery Donaldson (DE Bar ID 4367)
Lisa Zwally Brown (DE Bar ID 4328)
**MONTGOMERY, McCRACKEN,**
**WALKER & RHOADS, LLP**
1105 N. Market St.
Suite 1500
Wilmington, DE  19801
(302) 504-7800
rdonaldson@mmwr.com
lzbrown@mmwr.com


OF COUNSEL:

Steven M. Collins
Georgia Bar No. 178825
Christopher A. Riley
Georgia Bar No. 605634
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Fax: (404) 881-7777
steve.collins@alston.com
chris.riley@alston.com


*Attorneys for Philip A. Templeton, M.D., P.A.*