IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILIP A. TEMPLETON, M.D., P.A., )
                                                        )
        Plaintiff, )
                                                        )
v. ) Civ. No. 11-808-SLR
                                                        )
EMCARE, INC., )
                                                        )
        Defendant. )

---

R. Montgomery Donaldson, Esquire and Lisa Zwally Brown, Esquire of Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Steven M. Collins, Esquire and Christopher A. Riley, Esquire of Alston & Bird LLP.

Kelley E. Farnan, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendant. Of Counsel: Phillip A. Geraci, Esquire and W. Stewart Wallace, Esquire of Kaye Scholer LLP.

---

**MEMORANDUM OPINION**

Dated: June 15, 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On September 13, 2011, plaintiff Philip A. Templeton, M.D., P.A. ("plaintiff") filed a complaint seeking judgment on an alleged payment due under a Membership Interest Purchase Agreement ("Purchase Agreement") entered into by plaintiff and EmCare, Inc. ("defendant") on October 17, 2008. (D.I. 1 at ¶ 8) The Purchase Agreement set forth the terms of defendant's acquisition of plaintiff's issued and outstanding membership interests. (Id. at ¶ 10) Plaintiff's complaint seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 and, in the alternative, pleads both breach of contract and breach of the implied covenant of good faith and fair dealing. (Id. at ¶¶ 37-63)

On November 18, 2011, defendant answered the complaint, asserting several affirmative defenses and a counterclaim adding Dr. Philip A. Templeton ("Templeton") as a second counterclaim defendant. The counterclaim asserts five counts: (1) breach of § 2.3 of the Purchase Agreement; (2) breach of § 8.3 of the Purchase Agreement; (3) breach of the implied covenant of good faith and fair dealing; (4) fraudulent misrepresentation; and (5) fraudulent inducement to contract. (D.I. 9 at ¶¶ 48-84)[1] Defendant seeks damages of no less than $10 million. (Id. at 30-31) Presently before the court is a partial motion to dismiss defendant's counterclaims, filed by plaintiff on January 6, 2012. (D.I. 18) Plaintiff moves to dismiss counts one, three, four and five of the counterclaim. (Id.)

## II. BACKGROUND

---

[1] Citations to D.I. 9 throughout this memorandum refer to the "counterclaims of defendant" portion of the document beginning on page 9 rather than the separately numbered "answer" portion on pages 1-9.

## A. The Parties

Plaintiff is a professional association that exists under the laws of the State of Maryland and has its principal place of business in the State of Maryland. Plaintiff provides retail teleradiology services, whereby a physician reviews and interprets radiological patient images such as x-rays and CT scans that are transmitted electronically, thus allowing the physician to provide patient services remotely. (D.I. 9 at ¶ 10)

Templeton, a resident and citizen of the State of Maryland, is the sole shareholder of plaintiff.[2] (*Id.* at ¶ 3)

Defendant is a Delaware corporation with its principal place of business in Dallas, Texas. Defendant is a provider of various physician, anesthesiology and radiology services. (*Id.* at ¶ 8)

All three entities are parties to the October 17, 2008 Purchase Agreement.

## B. The Purchase Agreement

In 2008, defendant entered into discussions with plaintiff to negotiate the acquisition of Templeton's teleradiology practice. (*Id.* at ¶¶ 9, 12) During negotiations, plaintiff allegedly claimed expertise in retail teleradiology in addition to a large customer base, including several new customers who were ready to close contracts once the acquisition finalized. (*Id.* at ¶ 12) Negotiations culminated in the drafting of the Purchase Agreement and the sale of the membership interests of the teleradiology practice to defendant for $27.5 million. (*Id.* at ¶ 14) As a condition of closing,

---

[2] Templeton is joined in the counterclaim pursuant to Fed. R. Civ. P. 13(h) and 20(a)(2). (D.I. 9 at ¶ 3)

2

defendant insisted that Templeton remain as the president of the practice. (*Id.* at ¶ 15) In his capacity as president, Templeton would "reasonably cooperate with [defendant] . . . in their efforts to continue and maintain business relationships of [plaintiff]" as they existed prior to closing. (*Id.* at ¶ 16)

To encourage compliance with this clause, the parties agreed to incorporate an "Earn-Out Consideration" into the Purchase Agreement. Section 2.3 states that plaintiff "shall be entitled to receive from [defendant] an Earn-Out Payment or [defendant] shall be entitled to receive payment of the Deficiency Amount from [plaintiff]" depending on plaintiff's earning before interest, taxes, depreciation, and amortization ("EBITDA") for 2009. (*Id.* at ¶ 17) If plaintiff reached a certain minimum EBITDA (the "Earn-Out Threshold") during 2009 (the "Earn-Out Period"), defendant would pay seven times the EBITDA in excess of the Earn-Out Threshold up to $10 million. (*Id.* at ¶ 19) Likewise, if plaintiff failed to reach a certain EBITDA (the "Earn-Out Floor") during the Earn-Out Period, it would pay seven times the difference between the Earn-Out Floor and the EBITDA up to $10 million (the "Deficiency Amount"). (*Id.*) The Purchase Agreement required defendant to provide plaintiff with a written calculation of the Deficiency Amount no later than March 1, 2010. (*Id.* at ¶ 39)

Neither party disputes that § 11.12 of the Purchase Agreement states that "[t]ime is of the essence of this Agreement." (D.I. 1, ex. A at 43) However, defendant asserts this clause is merely a "boilerplate, general, free-floating provision" due to its location in the "Miscellaneous" section. (D.I. 9 at ¶ 13) Defendant further claims that this provision was neither discussed nor negotiated at the time of contract formation. (*Id.*)

3

## C. Disagreement on Purchase Agreement Obligations

During 2009, plaintiff allegedly failed to close deals with new customers and lost existing customers. (*Id.* at ¶ 25) Defendant claims it was plaintiff's responsibility to prepare monthly financial reports and that plaintiff was in possession of all the necessary financial information that would have allowed it to predict a year-end EBITDA shortfall. (*Id.* at ¶ 23) Consistent with this assertion, plaintiff supposedly expressed concern over the prospect of an EBITDA deficit. (*Id.* at ¶ 28) The practice floundered despite defendant's allegations that it channeled business to plaintiff from its own physician services throughout 2009 to help plaintiff achieve the minimum EBITDA and that it held regular operating reviews with plaintiff. (*Id.* at ¶ 22)

As the deadline for the year-end EBIDTA calculations drew near, defendant contends that it orally extended the Earn-Out calculation date to allow plaintiff more time to reach the Earn-Out Threshold, and that these extensions continued throughout 2010. (*Id.* at ¶¶ 30, 34) Defendant provided plaintiff with an income statement in early 2010 that confirmed a large EBITDA shortfall which would result in the maximum payment of $10 million. (*Id.* at ¶ 32) Eventually, defendant sent a formal letter to plaintiff demanding the $10 million payment along with a calculation of the Deficiency Amount. (*Id.* at ¶ 36)

Plaintiff responded through counsel that, because defendant provided the letter more than 60 days after the December 31, 2009 deadline mandated by the Purchase Agreement, payment was no longer due. (*Id.* at ¶ 39) Defendant contends that plaintiff waived the "time is of the essence" clause by agreeing to extensions to pay the

4

Deficiency Amount and that accepting the extensions was a scheme to avoid payment. (*Id.* at ¶¶ 41, 44)

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." (*Id.*) Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

## III. DISCUSSION

### A. Count One: Breach of § 2.3 of the Purchase Agreement

5

Defendant claims that plaintiff failed to satisfy § 2.3 of the Purchase Agreement, which requires payment of the $10 million Deficiency Amount as per the EBITDA shortfall calculations. (D.I. 9 at ¶ 53) Plaintiff responded with allegations that count one fails to state a claim and should be dismissed. (D.I. 19 at 3) Under Delaware law, "to survive a motion to dismiss for failure to state a breach of contract claim, [a] plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted). "Clear and unambiguous language found in a contract is to be given its ordinary and usual meaning." *Iacono v. Barici,* Civ. No. 02-021, 2006 WL 3844208, at *2 (Del. Super. Dec. 29, 2006) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

The first requirement is satisfied in this case because neither party disputes that a valid, express contract existed at the time of signing. Defendant further satisfies the third requirement by claiming economic damages of no less than $10 million, along with prejudgment interest. The dispute at bar concerns the second requirement of a breach of an obligation imposed by the contract. Essentially, plaintiff denies any obligation to pay the Deficiency Amount because defendant did not satisfy the condition precedent of providing a written calculation of the Deficiency Amount to plaintiff by March 1, 2010. (D.I. 19 at 3-4)

Under Delaware law, a condition precedent is an "event that, although not certain to occur, must occur before performance under a contract becomes due." *Munro v.*

6

*Beazer Home Corp.*, Civ. No. 03-081, 2011 WL 2651910, *4 (Del. C. P. June 23, 2011). The parties disagree as to whether the "time is of the essence" clause of the Purchase Agreement renders the March 1 due date a valid condition precedent. Defendant asserts that, regardless of whether the due date is a valid condition precedent, the supposed oral modifications to the contract extend the due date beyond March 1st and impose a continuing obligation on plaintiff to pay. (D.I. 24 at 8-9)

Therefore, the central question is whether the allegation of oral modifications to the contract is sufficiently plausible to support a claim for relief.[3] Here, defendant's allegation of oral extensions to the deadline is sufficiently plausible to support the existence of an obligation under the contract, regardless of any difficulty defendant might encounter in proving the existence of the modifications. *See Calloway* 599 F. Supp. 2d at 546 n.2 (although "the court suspects that plaintiffs will struggle to prove their case," this is "not grounds for dismissal at this juncture"). Because the complaint satisfies all three requirements for successfully pleading a breach of contract under Delaware law, count one survives plaintiff's motion to dismiss.

## B. Count Three: Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract. *See Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). The Delaware Supreme Court recognizes "the occasional necessity of

---

[3] "To hold that plaintiffs' amended complaint is plausible, or passes muster under *Twombly*, is not to suggest that plaintiffs are likely to succeed." *Calloway v Green Tree Servicing, LLC* 599 F. Supp. 2d 543, 546 n.2 (D. Del. 2009). Rather, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. 556.

implying contract terms to ensure the parties' reasonable expectations are fulfilled. This quasi-reformation, however, should be [a] rare and fact-intensive exercise." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (alteration and omission in original)). In general, the implied covenant requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the contract. *Dunlap*, 878 A.2d at 447 (citations omitted).

Defendant alleges that plaintiff took advantage of oral extensions to the Earn-Out period to avoid paying defendant the Deficiency Amount due under the Purchase Agreement, thus denying defendant the "fruits of the contract." (D.I. 24 at 14) If these allegations are taken as true, as is required by 12(b)(6), then there exists a reasonable basis for a claim for relief and the motion to dismiss must be denied. *See Erickson*, 551 U.S. at 94; *Christopher*, 536 U.S. at 406. Plaintiff argues that count three should nonetheless be disregarded for being duplicative of count one. (D.I. 19 at 11-12) Defendant, however, is permitted to pursue claims in the alternative, even though the alternative theories of liability may share the same damages. Fed. R. Civ. P. 8(d); *see also Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*, Civ. No. 3658, 2009 WL 1124451, at *1 (Del. Ch. Apr. 20, 2009). Count three, therefore, survives plaintiff's motion to dismiss.

### C. Count Four: Fraudulent Misrepresentation

Defendant asserts that plaintiff knowingly made material misstatements and/or failed to state material facts in claiming that defendant breached the contract for failure to send the EBITA in a timely manner, as plaintiff was aware that: (1) its obligation to pay did not expire on March 1; (2) time is not of the essence in the contract; and (3) it would still be responsible for payment even up to the point the parties no longer agreed on extensions to the due date. (D.I. 9 at ¶ 73)

In Delaware, "[t]he economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product . . . has not caused personal injury or damage to other property," or where "the only losses suffered are economic in nature." *Delaware Art Museum v. Ann Beha Architects, Inc.*, Civ. No. 06-481, 2007 WL 2601472, at *2 (D. Del. Sept. 11, 2007). Because defendant only claims economic losses, the claim falls within the economic loss doctrine. (*Id.* at ¶ 77)

Delaware recognizes an exception to the economic loss doctrine for instances of fraudulent inducement to contract. *See Brasby v. Morris*, Civ. No. 10-022, 2007 WL 949485, at *7 (Del. Super. Mar. 29, 2007). However, if the "statements and assurances for which plaintiff bases his claim were all made at a point in time following the formation of a valid contract," then the fraud claims "do not arise independently of the underlying contract" and these claims "are better addressed by applicable contract law." *Id.* at *8; *see Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 2012 WL 591753, at *7 (D. Del. Feb. 14, 2012) (motion to dismiss granted when the claimant solely alleged fraud relating to the performance of the contract). As in *Kuhn*, defendant merely alleges fraudulent misrepresentation as it pertains to the performance of the

9

contract, which in this case is the payment of the Deficiency Amount.[4] The claim does not fall within the exception to the economic loss doctrine and does not survive the motion to dismiss.

### D. Count Five: Fraudulent Inducement to Contract

Defendant alleges that plaintiff induced contract formation through false claims of "substantial expertise in the retail teleradiology business" as well as false claims that the business was growing. (D.I. 9 at ¶¶ 80-81) Again, defendant claims only economic damages. (*Id.* at ¶ 84) Unlike count four, count five alleges fraudulent inducement to contract and, therefore, falls within the exception to the economic loss doctrine.

Nonetheless, allegations of fraud are subject to a heightened pleading standard in that Fed. R. Civ. P 9(b) requires the party to "state with particularity the circumstances constituting fraud or mistake." This "does not require the recitation of 'every material detail of the fraud such as date, location and time [; however, claimants] must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Student Fin. Corp.*, Civ. Civ. No. 03-507, 2004 WL 609329, at *1 (D. Del. Mar. 24, 2004) (quoting *In re Nice Sys.*, 135 F. Supp. 2d 551, 557 (D.N.J. 2001).

Another element of a successful fraud claim is scienter. *See Kuhn Const. Co. v. Diamond State Port Corp.*, 2011 WL 1576691, at *9 (D. Del. Apr. 26, 2011). A claimant must allege that the accused party "knew or believed that the information that was

---

[4] Defendant argues that the duty to not misrepresent material facts exists outside of the contract. (D.I. 24 at 16) The case cited by defendant, however, only recognizes an independent duty in the context of merger, and is not presently applicable. *See Pryor v. Aviola*, 301 A.2d 306, 308-09 (Del. Super. 1973).

10

provided was either false or purposefully misleading" and must identify "the content of the alleged misrepresentations or how the claimed representations were false." *Id.*; see *Kuhn Const. Co.*, 2012 WL 591753 at *8 (a motion to dismiss a claim of fraud and misrepresentation was granted, citing claimant's failure to identify any motivation for the alleged false representations). Here, defendant alleges two specific fraudulent statements supposedly made at the time of contract formation: (1) that plaintiff had substantial expertise in the retail teleradiology business; and (2) that plaintiff was a growing business with several new contracts ready to close post-acquisition. (D.I. 9 at ¶¶ 80-81) Additionally, defendant proposes the motive, to wit, plaintiff hoped to induce defendant to buy the practice. (*Id.* at ¶ 83) Unlike *Kuhn*, defendant's claims are plausible and satisfy the heightened pleading standard under Rule 9(b).

## IV. CONCLUSION

For the reasons stated, plaintiff's motion to dismiss is granted in part (as to counterclaim count four) and denied in part (as to counterclaim counts one, three and five). An order shall issue.